Arnold P. Peter (SBN: 120091)
apeter@peterlawgroup.com
MARCUS J. LEE (SBN: 281886)
mlee@peterlawgroup.com
**PETER LAW GROUP**
9100 Wilshire Blvd., Suite 880W
Beverly Hills, CA 90212
Telephone: (310) 277-0010
Facsimile: (310) 432-0599

Attorneys for Defendant
ELLEN PEARSON-KARDASHIAN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KOURTNEY KARDASHIAN, an individual; KIMBERLY KARDASHIAN, an individual; KHLOE KARDASHIAN ODOM, an individual; ROBERT KARDASHIAN, JR. an individual, and KRIS JENNER, ,<br><br>Plaintiffs,<br><br>vs.<br><br>ELLEN PEARSON, an individual, a/k/a ELLEN KARDASHIAN and a/k/a ELLEN PIERSON; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. CV13-02406-GHK (JCx)<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 12, 2013<br>Time: 9:30 a.m.<br>Courtroom: 650<br><br>**This motion is made following attempts to hold the conference of counsel pursuant to L.R. 7-3 on July 1, July 3 and July 5 and July 10, 2013** |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant ELLEN PEARSON-KARDASHIAN shall and hereby moves for leave to file a counterclaim in this matter. The motion will be heard on August 12, 2013 in Courtroom 650, located at 255 East Temple Street, Los Angeles, CA 90012. The motion will be based on this Notice of Motion and Motion, oral argument if permitted by the court, the pleadings in this action, and all other matters as may be properly considered by the court.

DATED: July 11, 2013

**PETER LAW GROUP**

By: __/s/ Marcus J. Lee_____
MARCUS J. LEE
Attorneys for Defendant
ELLEN PEARSON-KARDASHIAN

# TABLE OF CONTENTS

**I. Introduction and Summary** ........................................................1

**II. Statement of Facts** ..................................................................1

**III. Standard On Motion For Leave to File Counterclaim** ........................4

A. This Court Should Grant The Motion Because There Is No Undue Delay, Bad Faith, Undue Prejudice Or Futility ........................5

1. There Is No Undue Delay In The Filing Of The Motion For Leave To File A Counterclaim....................5

2. There is No Bad Faith In The Filing Of The Instant Motion........................................................5

3. Plaintiff Will Not Suffer Any Undue Prejudice As A Result Of The Court Granting The Motion..................6

4. The Proposed Counterclaim Is Not Futile ............................6

B. The Movant Has Either Discharged Or Should Be Excused From Strict Compliance With Local Rule 7.3 .....................................6

**CASES**

*Thomas v. Baca*
231 F.R.D. 397, 404 (C.D.Cal.2005).....................................................................10
*Hip Hop Beverage Corp. et. al. v. RIC et. al.*
220 F.R.D. 614, 620 (C.D. CAL 2003) ........................................................... 4, 5, 6
*Hurn v. Retirement Fund Trust of Plumbing*
648 F.2d 1252, 1254 (9th Cir. 1981) .....................................................................5
*Yue v. Storage Tech. Corp.*
C07-05850 JW, 2008 WL 4185835 (N.D. Cal. 2008)..................................... 11, 12

**RULES**

Central District Of Californis Local Rule 7.3.......................................................6, 11
Federal Rules of Civil Procedure 11.......................................................................11
Federal Rules of Civil Procedure 13(a) ...................................................................4
Federal Rules of Civil Procedure 13(e) ...................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction and Summary

Defendant Ellen Pearson-Kardashian seeks leave of the court to file a counterclaim alleging Defamation, Public Disclosure of Private Facts, Intentional Infliction of Emotional Distress, Civil Harassment and Civil Conspiracy to Defame. The counterclaims arose after the answer was filed. Defendant's answer was filed on May 14, 2013. On or about June 8, 2013, Episode 2 of "Keeping up with the Kardashians" entitled "Enough is Enough" (the "Episode") aired on the E! Network. The Counterclaims are brought as a result of statements made in connection with and during the Episode. Thus, Ellen brings this motion for leave to amend the answer on file herein to add counterclaims which arose after the answer was filed, a draft of the proposed First Amended Answer and Counterclaims is attached hereto as Exhibit A.

### II. Statement of Facts

The original complaint was filed by the children and the former spouse of the famed late attorney Robert Kardashian ("Robert"). The Plaintiffs are referred to as either the "Kardashians" when referring to all of the Plaintiffs and as the "Kardashian Siblings" when referring to Robert Kardashian's children. Robert Kardashian's former spouse is referred to as "Kris Jenner." Ellen seeks leave to file a counterclaim against the Kardashians.

The Kardashians participate in a "reality" television series titled "Keeping Up with the Kardashians" (often referred to simply as "The Kardashians"). The series premiered on October 14, 2007, on the E! (Entertainment) Network. The series follows the often sordid, decadent and scandalous lives of the Kardashians. The series' phenomenal success is based on a basic premise embraced by the Kardashians in general and Kris Jenner in particular -- to expose their outlandish and controversial activities to world-wide television viewers for commercial profit.

The success of the series is predicated entirely on the revelation of private information of the most salacious variety, the degree and nature of which must escalate in order to maintain public interest. The television series has engendered international notoriety and generated millions of dollars in revenue for the Kardashians. This series has also led to the spin-off series "Kourtney and Kim Take New York," "Khloé & Lamar," and "Kourtney and Khloé Take Miami," (retitled "Kourtney and Kim Take Miami"). The series expose a variety of activities which most individuals would consider deeply personal and embarrassing including unorthodox sexual acts, extramarital affairs, sex tapes and out of wedlock child birth.

Episode 2 from Season 8 of "Keeping up with the Kardashian," entitled "Enough is Enough" ("Episode") first aired on or about June 8, 2013. As described below, the filing of this entire lawsuit by the Kardashians was nothing more than part of a carefully orchestrated aspect of the Episode. The entire saga culminating in the filing of the complaint in this action was orchestrated off screen by the Kardashians and then scripted for the Episode.

The story began with a mysterious series of text messages sent to Defendant Ellen Pearson-Kardashian ("Ellen" or "Defendant") from a shadowy "private investigator" starting on March 4, 2013. Ellen is the surviving widow of Robert Kardashian who he married after divorcing Kris Jenner. In his texts, "Jake the Private Investigator," who is later featured in the Episode, offered damaging information regarding Kris Jenner to Ellen. He also attempted to entice Ellen by stating that he has damaging information about her obtained through investigations which were purportedly ordered by Robert Kardashian prior to his death. The texts are purposefully ambiguous but certainly imply that information injurious to her and to Kris Jenner is available for sale to Ellen. When Ellen refused to engage in such a discussion or transaction, Jake abruptly and menacingly terminated the dialogue by threatening to turn the information that he had over to the Kardashians.

After the failed attempt to entrap Ellen into the drama of their scripted "reality" television production, the Kardashians were left to air what little information they have. The relevant scenes in the Episode are filmed and edited in such a way to appear as if it is the first time that Kimberly and Khloe are meeting with Jake to discuss Ellen. In the carefully scripted Episode, Jake ultimately "reveals" to the Kardashians negative information about Ellen but noticeably absent in the Episode is the adverse information that Jake claimed to possess about Kris Jenner. The information revealed about Ellen happened to be of the same nature that Jake attempted to entrap Ellen with prior to the filming of the Episode. In the Episode, the Kardashians repeatedly attribute highly incendiary and provocative statements about Kris Jenner's fitness as a mother to Ellen when they were in fact made by Robert Kardashian about his ex-wife and the mother of his children.

The Episode was crafted as a form of "damage control" when vivid details were released to the public which ran contrary to the image Kris Jenner has attempted to portray on "Keeping Up With The Kardashians." The revelations from her former husband Robert Kardashian are inconsistent with Kris's portrayal as a loving and caring mother who puts her children first. Robert's diaries and notes exposed Kris as a manipulative and devious mother and ex-wife who simply used and exploited her children and family.

The Kardashians carefully developed the Episode as a "spin" to neutralize the exceptionally negative opinion that Robert had of Kris. The Kardashians' strategy was to neutralize the unrefuted details in Robert's diaries and notes by suggesting that they were in fact both Robert's words—but were fabricated by Ellen. The Kardashians' strategy was to create a fake scenario where "Robert's story and words" became the narrative of his surviving widow which the Kardashians could then claim were not credible because they were motivated by greed. This shameful rewriting of Robert's history by the Kardashian Siblings, at

the direction and behest of Kris Jenner, was motivated by television ratings and commercial profit and is an insult to the legacy of their own father and former husband.

While Ellen is a private person with a career in the real estate industry, the Kardashians do not have any meaningful careers or professions. Instead, they subsist on exposing their perverse private affairs to the world. While the disclosure of the facts in the original complaint and the Episode only served to increase the Kardashians' notoriety, the false attribution to Ellen of what Robert had stated and the other defamatory statements made by the Kardashians have caused actual and calculable damage to Ellen.

## III. Standard On Motion For Leave To File Counterclaim

Pursuant to Rule 13(e) of the Federal Rules of Civil Procedure[1], "[a] claim which either matured or was acquired by the pleader after serving a pleading may, with permission of the court, be presented as a counterclaim by supplemental pleading." In this case, all counterclaims arose after the filing of the answer.

Rule 13(e) also governs the standard on a motion for leave to file a counterclaim and provides that a court may grant leave when the moving party "fails to set up a counterclaim through (1) oversight, (2) inadvertence, or (3) excusable neglect, or (4) when justice requires." Therefore, when considering whether to allow "an omitted counterclaim generally [courts] 'adhere to the liberal amendment policy of Rule 15' in deciding whether to grant the requested leave." *Hip Hop Beverage Corp. et. al. v. RIC et. al.*, 220 F.R.D. 614, 620 (C.D. CAL 2003) ("*Hip-Hop Beverage*"). Rule 13(a) also directs that "leave [to amend] shall be freely given when justice so requires." *Id.*

[1] References to a "Rule" refer to the Federal Rules of Civil Procedure.

**A. This Court Should Grant The Motion Because There Is No Undue Delay, Bad Faith, Undue Prejudice Or Futility**

**1. There Is No Undue Delay In The Filing Of The Motion For Leave To File A Counterclaim**

Courts in this District recognize that where a party opposes a motion for leave to file a counterclaim based on undue delay, the opposing party must, at a minimum, show delay "past the point of initiation of discovery ... " *Hip Hop Beverage Corp.* at 620. In a truncated meet and confer process, Plaintiffs have asserted that Ellen unduly delayed in bringing this action but it is clear that discovery has not commenced in this action. Further, under the applicable standard, delay alone is not a proper basis for opposing the motion.[2] This motion was brought slightly a month after the Episode aired and no proceedings of any significance have occurred in this case. This motion was filed as diligently as possible after an adequate investigation into the facts could have been conducted.

**2. There Is No Bad Faith In The Filing Of The Instant Motion**

Here, Plaintiff cannot assert that the pending Motion is brought in bad faith. Courts consider bad faith to include "such tactics as, for example, seeking to add a defendant merely to destroy diversity jurisdiction." *Hip Hop Beverage Corp.* at 621. The only reason the counterclaims were not filed with the answer is because the Episode giving rise to Ellen's claims had not yet aired when she filed her answer.

---

[2] Moreover, even if discovery had begun, "courts will permit amendment provided the moving party has a reasonable explanation for the delay" *Id*. Here, the delay in not initially asserting the counterclaims earlier is excusable because the circumstances and new facts, in light of which the Counterclaim is being filed, had not yet taken place. Moreover, the Ninth Circuit has found that "delay alone is not sufficient to justify the denial of a motion requesting leave to amend." *Hurn v. Retirement Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981).

**3. Plaintiff Will Not Suffer Any Undue Prejudice As A Result Of The Court Granting The Motion**

In *Hip Hop Beverage Corp.*, the court held that a counterclaim filed two (2) months in advance of the discovery cut-off date did not constitute undue prejudice. *Hip Hop Beverage Corp.*, at 622. Moreover, the court noted that the parties, if necessary, could extend discovery. *Id.* That is not necessary in this case. This case was commenced less than four months ago, there has been no discovery and the court has not yet held the case management conference. There is no prejudice in allowing the counterclaims to proceed.

**4. The Proposed Counterclaim Is Not Futile**

As explained below, Plaintiffs have only asserted that Ellen's counterclaims are frivolous because of a failure of proof. That is not the appropriate standard on a motion for leave to allow the filing of a counterclaim. "An amendment is 'futile' only if it would clearly be subject to dismissal." *Hip Hop Beverage Corp.* at 622.

While Plaintiffs may believe that the claims are lacking in merit or proof, there can be no question that the allegations set forth in the counterclaim, if accepted as true, would allow Ellen to prevail on her claims. Therefore, the counterclaims would certainly survive a Rule 12 motion and the proposed counterclaims are not, therefore, futile.

**B. The Movant Has Either Discharged Or Should Be Excused From Strict Compliance With Local Rule 7.3**

Local Rule 7.3 provides that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." As explained below, Ellen's attorneys have either discharged their obligations under Local Rule 7.3 or should be excused from strict compliance.

On July 1, 2013, Ellen's counsel advised counsel for the Plaintiffs as to Ellen's intention to file a counterclaim and provided an early draft version of the

proposed cross-complaint. Exhibit A to Declaration of Marcus J. Lee In Support of Motion For Leave ("Lee Declaration"). There was no response from Plaintiffs' counsel when on July 3, 2013, Counsel for Ellen again contacted counsel for Plaintiffs and once more advised counsel that Ellen intended seek leave to file a counterclaim against Plaintiffs, and also a third-party complaint against the production company that developed and owned "Keeping Up With The Kardashian." Plaintiffs' counsel was again provided an updated draft version of the proposed counterclaim and third-party complaint. Exhibit B to Lee Declaration. Counsel for Ellen indicated that she intended to file the counterclaim and third-party complaint on July 5, 20013.[3] *Id*.

Counsel for the Plaintiffs responded on July 3, 2013 with a three page letter where, among other items, he accused counsel for Ellen of "outrageous, unprofessional and unethical conduct and gamesmanship." Exhibit C to Lee Declaration (emphasis in original). Furthermore, counsel for Plaintiffs objected to the fact that Ellen's counsel had yet to return a redline of the draft Rule 26 Report. Exhibit C to Lee Declaration, footnote 1.

Counsel for the Plaintiffs then went on to fully and in detail articulate the position of the Plaintiffs as to the proposed counterclaims as follows:

> The proposed Counterclaims are frivolous, clearly presented for an improper purpose, the claims are not warranted by existing law, the purported factual contentions lack evidentiary support, and most of the alleged factual allegations contained in the Counterclaims are comprised of irrelevant, false or improper matters inserted therein. The proposed first and second counterclaims lack any factual or legal basis, and fail as a matter of law. The proposed third counterclaim is based upon and wholly subsumed within the first and second counterclaims, and therefore does not constitute a valid independent claim. And, with respect to your proposed fourth and fifth

[3] Defendant has elected not to file a third-party complaint at time.

> counterclaims, the causes of action themselves do not constitute cognizable legal claims, are not warranted by existing law, and are without any factual basis. In fact, the fifth counterclaims [sic.] appears to be premised on a legal claim of your own concoction and invention. In addition, there appears to be no cognizable legal claims alleged against the proposed new third party defendants, nor any factual basis to add them as a parties [sic.] in this action. It is clear that the Counterclaims, and addition of the new defendants, are being advanced for the improper purposes of harassment and to increase the costs of litigation, and in an effort to obtain media attention.

*Id*. at p. 2.

While the above comments certainly constitute an accurate recitation of the Plaintiffs' position, none of the responses constitute a valid objection to the instant motion. Boilerplate conclusions including contentions that "the claims are not warranted by existing law," contain "irrelevant, false or improper matters," are lacking "any factual or legal basis," or "do not constitute cognizable legal claims" without further specification does not support a legitimate opposition to the instant motion nor do they promote the meet and confer dialogue in any way. Furthermore, to the extent Plaintiffs can actually prove that the claims "are being advanced for the improper purposes of harassment and to increase the costs of litigation, and in an effort to obtain media attention," their remedy is wholly independent of the pending motion.[4]

Based on the foregoing response and as explained in detail below, any further meet and confer discussions would be futile. Yet, counsel for Ellen nonetheless confirmed his willingness to "gladly engage in a live or in person conversation with you about the proposed pleading if you have substantive

[4] Plaintiffs' assertion that this motion and the counterclaims are asserted solely for media attention is breathtaking in its hypocrisy when it is clear that this entire lawsuit was filed as an element of Plaintiffs' television program.

comments that would help narrow the issues, obviate the filing of an opposition or a subsequent motion to dismiss or convince us to not file the claims." Exhibit D to Lee Declaration. In response to this invitation, Plaintiffs' counsel responded with a five page letter and raised various objections to the redline of the Rule 26 Report provided to him by Ellen's counsel. Exhibit E to Lee Declaration.

In response to these objections, on the morning of July 9, counsel for Ellen advised Plaintiffs' attorney that Ellen would accept all the proposed edits and objections to the Rule 26 Report. Exhibit F to Lee Declaration. Furthermore, counsel for Ellen inquired into Plaintiffs' counsel's availability for a meet and confer any time on Tuesday, July 9, or any time on Wednesday, July 10. *Id*. Counsel for Ellen stated, "We will make ourselves available to you in any time frame." *Id.*

At 8:16 p.m. on July 9, Plaintiff's attorney sent two communications with attachments, indicating that they would only agree to telephonic meet and confer conversation and then only in limited one and two hour windows on Friday, July 12 in limited windows between the 11 a.m. to noon and 2 p.m. to 4 p.m. Exhibit G and H to Lee Declaration.

On the morning of July 10, Counsel for Ellen indicated that waiting until Friday, July 12 would make it a full two weeks after Plaintiffs' were notified of the intention to file a motion for leave to file the counterclaims. Exhibit I to Lee Declaration. Counsel for Ellen advised Plaintiffs' attorney that Ellen would accept all the proposed edits and objections to the Rule 26 Report with the exception of one: the ability to conduct discovery on revenues and profits generated by plaintiffs. *Id.* Furthermore, counsel for Ellen indicated that he would make himself available for a telephonic meet and confer session anytime on Wednesday, July 10 including the late evening hours which was the time frame counsel for Plaintiffs' would send his lengthy letters on the subject of the proposed pleadings. *Id.*

Based on the foregoing, Ellen contends that her attorneys have substantially fulfilled their obligations under Local Rule 7.3 by providing two different versions of the proposed pleadings which set forth the various claims asserted by Ellen and the facts upon which the claims are based, along with several opportunities to engage in a telephonic or live conversation. A decision from the Northern District cogently explains the rationale behind the meet and confer obligations and how this requirement is manipulated by litigants who are interested in delay, not resolution:

> Where parties have failed to comply with a requirement to meet and confer pursuant to other local rules, courts have held that this failure should not serve as a basis to deny a motion and have considered whether resolution is possible in determining whether to order the parties to meet and confer. See, e.g., *Thomas v. Baca*, 231 F.R.D. 397, 404 (C.D.Cal.2005) (where defense counsel argued that plaintiffs' counsel failed to meet and confer prior to the filing of motion for class certification as required by local rule, the court noted that it "is not persuaded that this fact, if true, should serve as a basis to deny the motion," noting that it did not appear **"that any informal resolution of this motion is possible").** Here, ordering the parties to meet and confer **would similarly be futile**. After Defendants filed their motion for fees, during a call with Defense counsel, **Plaintiff stated that he would have disputed the fees from the outset** (Wakefield Decl. at 2 ¶ 3) and protested that he was not given the chance to dispute them within the statutory time limit. Defendants also note that **Plaintiff generally refused to discuss what issues might be resolved at a meet and confer**. See Walefield Decl. at 1-2 (Wakefield to Yue: "I asked whether there were any particular items about which you believed a meet and confer to resolve disputed issues would be appropriate. You refused to discuss the subject").

In addition, Yue discussed fees with defense counsel in an April 24, 2008 phone call, albeit one that took place after the motion for fees was filed.

*Yue v. Storage Tech. Corp*., C07-05850 JW, 2008 WL 4185835 (N.D. Cal. 2008) (emphasis added).

From the beginning, the moving party provided all of the information it possibly could regarding the counterclaims that it asserted and the facts upon which those claims were based. And, from the start, counsel for Plaintiffs took the position that the claims were frivolous without ever identifying the precise reasons for his assertion. The Plaintiffs' unwavering position that the claims were not only meritless but subject to Rule 11 sanctions, coupled with the refusal to confer except within an extremely narrow time frame is the best evidence of the fact that Plaintiffs have no valid objection to the motion. If counsel for Plaintiffs could find time to write detailed letters (totaling 10 single spaced pages, annotated with footnotes), he certainly could have outlined any legitimate objections to the motions or used that time to discharge his meet and confer obligations in a telephone call or meeting.

Consistent with the decision in ***Yue v. Storage Tech. Corp***., C07-05850 JW, 2008 WL 4185835 (N.D. Cal. 2008), any further dialogue between counsel would have been a complete waste of time and only engendered further delay. Based on the strident position of the Plaintiffs which they have repeatedly articulated (that the proposed claims were beyond meritless and subject to sanctions), an informal resolution envisioned by Local Rule 7.3 was simply not possible. Furthermore, it is beyond any doubt that another week or two delay would then be used by the Plaintiffs as a basis for opposing this motion.

DATED: July 11, 2013

**PETER LAW GROUP**

By: ___/s/ Marcus J. Lee___
MARCUS J. LEE
Attorneys for Defendant
ELLEN PEARSON-KARDASHIAN

**CERTIFICATE OF SERVICE**

*Kardashian, et al v Ellen Pearson aka Ellen Kardashian*

*USDC Case No. CV-13-02406-GHK(JCx)*

I hereby certify that on July 11, 2013, I electronically transmitted the below documents to the Clerk's Office of the United States District Court using the CM/ECF System for filing, and that the CM/ECF System will send a copy via electronic notice to all registered ECF participants.

1. Notice of Motion and Motion for Leave to File Counterclaim; Memorandum of Points and Authorities in Support thereof; and
2. Declaration of Marcus J. Lee In support of Motion for Leave to File Counterclaim.

/s/ Andrea Ramirez