**EXHIBIT A**
**TO MOTION FOR LEAVE TO FILE**
**COUNTERCLAIM**

1   Arnold P. Peter (SBN: 120091)
          apeter@peterlawgroup.com
2   MARCUS J. LEE (SBN: 281886)
          mlee@peterlawgroup.com
3   **PETER LAW GROUP**
    9100 Wilshire Blvd., Suite 880W
4   Beverly Hills, CA  90212
    Telephone:  (310) 277-0010
5   Facsimile:  (310) 432-0599

6   Attorneys for Defendant and
    Countercomplainant
7   ELLEN PEARSON-KARDASHIAN

8

9                 UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION

11

12  KOURTNEY KARDASHIAN, an individual;   )   Case No.   CV13-02406-GHK (JCx)
    KIMBERLY KARDASHIAN, an individual;   )
13  KHLOE KARDASHIAN ODOM, an             )   **DEFENDANT AND**
    individual; ROBERT KARDASHIAN, JR. an )   **COUNTERCLAIMANT ELLEN**
14  individual, and KRIS JENNER,          )   **PEARSON-KARDASHIANS' FIRST**
                                          )   **AMENDED ANSWER AND**
15              Plaintiffs,               )   **COUNTERCLAIM FOR:**
                                          )
16        vs.                             )   **1.  DEFAMATION**
                                          )
17  ELLEN PEARSON, an individual, a/k/a   )   **2.  PUBLIC DISCLOSURE OF**
18  ELLEN KARDASHIAN and a/k/a ELLEN      )   **PRIVATE FACTS**
    PIERSON; and DOES 1 through 10, inclusive, )
19                                        )   **3.  INTENTIONAL INFLICTION OF**
                                          )   **EMOTIONAL DISTRESS**
20              Defendants.               )
                                          )   **4.  CIVIL HARASSMENT**
21  CAPTION CONTINUED ON NEXT PAGE        )
                                          )   **5.  CIVIL CONSPIRACY TO DEFAME**
22  _____      )

23                                            **JURY TRIAL DEMANDED**

24                                            Complaint filed: April 04, 2013
25                                            Trial Date: Not Yet Set

26

27

28

                                    1              First Amended Answer and Counterclaim

1

ELLEN PEARSON-KARDASHIAN, an

2

individual,

3

Counterclaimant,

4

vs.

5

6

KOURTNEY KARDASHIAN, an individual;
KIMBERLY KARDASHIAN, an individual;

7

KHLOE KARDASHIAN ODOM, an

8

individual; ROBERT KARDASHIAN, JR. an
individual, and KRIS JENNER,

9

Counter-Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Answer and Counterclaim

## ANSWER

Defendant ELLEN KARDASHIAN ("'KARDASHIAN" or "Defendant"), through its undersigned counsel of record, answers Plaintiffs' Complaint ("Complaint"), as follows:

1. Answering Paragraph 1 of the Complaint, defendant denies each and every allegation contained in said paragraph.

2. Answering Paragraph 2 of the Complaint, defendant admits that she was married to Robert Kardashian and that she was in possession of Robert Kardashian's diary ("Diary"), several photographs ("Photographs") and family albums ("Family Albums"). Defendant admits that she has licensed portions of the Diary and Photographs for publication. Defendant further admits that she has recently filed for bankruptcy. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

3. Answering Paragraph 3 of the Complaint, defendant denies each and every allegation contained in said paragraph.

4. Answering Paragraph 4 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

5. Answering Paragraph 5 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

6. Answering Paragraph 6 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

7. Answering Paragraph 7 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

8. Answering Paragraph 8 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

9. Answering Paragraph 9 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

First Amended Answer and Counterclaim

10.     Answering Paragraph 10 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

11.     Answering Paragraph 11 of the Complaint, Defendant admits that she is an individual who is a citizen of and who is engaged in and doing business in the County of Los Angeles, State of California.

12.     Answering Paragraph 12 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

13.     Answering Paragraph 13 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

14.     Answering Paragraph 14 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

15.     Answering Paragraph 15 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

16.     Answering Paragraph 16 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

17.     Answering Paragraph 17 of the Complaint, Defendant admits that the citation from the Robert George Kardashian 2003 Trust dated July 26 (Articles 5) is correct but incomplete.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

18.     Answering Paragraph 18 of the Complaint, Defendant admits that the citation from Article 5 the Trust Agreement for the Robert George Kardashian 2003 Trust dated July 26, 2003 is correct but incomplete.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

19.     Answering Paragraph 19 of the Complaint, Defendant admits that the citations from the Trust (Articles 5 and 6) and Will (Article 4) are correct but incomplete.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

First Amended Answer and Counterclaim

20.     Answering Paragraph 20 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

21.     Answering Paragraph 21 of the Complaint, Defendant admits that at the time of his passing, Robert Kardashian was in possession of a photograph of and capturing Robert Kardashian with his children.   Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

22.     Answering Paragraph 22 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

23.     Answering Paragraph 23 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

24.     Answering Paragraph 24 of the Complaint, Defendant admits that she was in possession of the Diary and several photographs of and capturing Robert Kardashian with members of his family. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

25.     Answering Paragraph 25 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

26.     Answering Paragraph 26 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

27.     Answering Paragraph 27 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

28.     Answering Paragraph 28 of the Complaint, Defendant admits that she filed for Chapter 7 bankruptcy in the United States District Court for the Central District of California, in Riverside County, Case Number 1047447, captioned In re Ellen June Kardashian in and around November 2010 and that the bankruptcy was discharged in and about March 2011.   Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

29.     Answering Paragraph 29 of the Complaint, Defendant admits providing a list of property in the course of the bankruptcy proceedings.   Except as

so admitted, Defendant denies each and every allegation contained in said paragraph.

30.     Answering Paragraph 30 of the Complaint, Defendant admits that as part of the bankruptcy, to help reimburse her creditors, Defendant did list and was divested from various valuable assets, including artwork, jewelry and her house in Indian Springs, some of which property was received as a bequest from Robert Kardashian.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

31.     Answering Paragraph 31 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

32.     Answering Paragraph 32 of the Complaint, Defendant admits that she has, in the past, been compensated by the media in exchange for providing materials and information of public interest.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

33.     Answering Paragraph 33 of the Complaint, Defendant admits that in or about January 2013, she was compensated in connection with articles published by Bauer Publishing LP, owner and publisher of the weekly publications *In Touch Weekly* and *Life & Style*. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

34.     Answering Paragraph 34 of the Complaint, Defendant admits that she provided portions of the Diary and Photographs for publication. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

35.     Answering Paragraph 35 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation related to Plaintiff's 'discovery' contained in said paragraph.  Defendant denies each and every allegation relating to her actions/inactions contained in said paragraph.

36.     Answering Paragraph 36 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation related to Bauer Publishing LP's

intentions contained in said paragraph. Defendant denies each and every allegation relating to her actions/inactions contained in said paragraph.

37.     Answering Paragraph 37 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation related to Bauer Publishing LP's intentions contained in said paragraph. Plaintiff admits that Plaintiff sent her a letter as stated in said paragraph.  Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

38.     Answering Paragraph 38 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

39.     Answering Paragraph 39 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

40.     Answering Paragraph 40 of the Complaint, Defendant refers to her answers to Paragraphs 1-39 of the Complaint.

41.     Answering Paragraph 41 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

42.     Answering Paragraph 42 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

43.     Answering Paragraph 43 of the Complaint, Defendant admits that she was in possession of the Diary and provided portions for publication. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

44.     Answering Paragraph 44 of the Complaint, Defendant admits that Plaintiffs have demanded the Diary and Defendant has refused to give Plaintiffs said Diary. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

45.     Answering Paragraph 45 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

46.     Answering Paragraph 46 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

47.     Answering Paragraph 47 of the Complaint, Defendant denies each and every allegation contained in said paragraph. Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to other Defendants.

48.     Answering Paragraph 48 of the Complaint, Defendant denies each and every allegation contained in said paragraph relating to her actions or inactions. Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to Plaintiff's alleged damages.

49.     Answering Paragraph 49 of the Complaint, Defendant refers to her answers to Paragraphs 1-48 of the Complaint.

50.     Answering Paragraph 50 of the Complaint, Defendant denies each and every allegation contained in said paragraph relating to ownership of the Diary and/or any related copyrights.  Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to Plaintiff's actions.

51.     Answering Paragraph 51 of the Complaint, Defendant admits that she has licensed portions or the Diary for publication. Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to other Defendants.   Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

52.     Answering Paragraph 52 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

53.     Answering Paragraph 53 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

54.     Answering Paragraph 54 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

55.     Answering Paragraph 55 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

First Amended Answer and Counterclaim

56.     Answering Paragraph 56 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

57.     Answering Paragraph 57 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

58.     Answering Paragraph 58 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

59.     Answering Paragraph 59 of the Complaint, Defendant refers to her answers to Paragraphs 1-58 of the Complaint.

60.     Answering Paragraph 60 of the Complaint, Defendant denies each and every allegation contained in said paragraph relating to ownership of the Photograph and/or any related copyrights.  Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to Plaintiff's actions.

61.     Answering Paragraph 61 of the Complaint, Defendant admits that she has licensed the Photograph. Except as so admitted, Defendant denies each and every allegation contained in said paragraph.

62.     Answering Paragraph 62 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

63.     Answering Paragraph 63 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

64.     Answering Paragraph 64 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

65.     Answering Paragraph 65 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

66.     Answering Paragraph 66 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

67.     Answering Paragraph 67 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

68.     Answering Paragraph 68 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

69.     Answering Paragraph 69 of the Complaint, Defendant refers to her answers to Paragraphs 1-68 of the Complaint.

70.     Answering Paragraph 70 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

71.     Answering Paragraph 71 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

72.     Answering Paragraph 72 of the Complaint, Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph.

73.     Answering Paragraph 73 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

74.     Answering Paragraph 74 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

75.     Answering Paragraph 75 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

76.     Answering Paragraph 76 of the Complaint, Defendant denies each and every allegation contained in said paragraph. Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to other Defendants.

77.     Answering Paragraph 77 of the Complaint, Defendant refers to her answers to Paragraphs 1-76 of the Complaint.

78.     Answering Paragraph 78 of the Complaint, Defendant denies each and every allegation relating to the legitimacy of their conduct, contained in said paragraph.

79.     Answering Paragraph 79 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

First Amended Answer and Counterclaim

80.    Answering Paragraph 80 of the Complaint, Defendant refers to her answers to Paragraphs 1-79 of the Complaint.

81.    Answering Paragraph 81 of the Complaint, Defendant denies each and every allegation contained in said paragraph.

82.    Answering Paragraph 82 of the Complaint, Defendant denies each and every allegation relating to the legitimacy of their conduct, contained in said paragraph.  Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to other Defendants.

83.    Answering Paragraph 81 of the Complaint, Defendant denies each and every allegation contained in said paragraph. Defendant lacks sufficient information to deny or admit any allegation contained in said paragraph relating to other Defendants.

## AFFIRMATIVE DEFENSES

84.    Further answering the Complaint, Defendant pleads the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim

85.    Plaintiff has failed to state a claim upon which relief may be granted against this answering Defendant;

### SECOND AFFIRMATIVE DEFENSE
### Statute of Limitations

86.    The Complaint, and each cause of action therein, is barred by applicable statutes of limitations;

First Amended Answer and Counterclaim

**AFFIRMATIVE DEFENSE**

**Lack of Subject Matter Jurisdiction and Failure to Meet Registration Requirements**

87.     Plaintiff's claims are barred for lack of subject matter jurisdiction because Plaintiff lacks valid copyright registration and/or has not registered the alleged copyright in proper or timely fashion;

**FOURTH AFFIRMATIVE DEFENSE**

**Res Judicata**

88.     Plaintiff's claims are barred by the doctrine of res judicata.

**FIFTH AFFIRMATIVE DEFENSE**

**Collateral Estoppel**

89.     Plaintiff s claims are barred by the doctrine of collateral estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

**Laches**

90.     Plaintiff s claims are time-barred by the doctrine of laches for failing to timely allege claims against Defendant.

**SEVENTH AFFIRMATIVE DEFENSE**

**Estoppel**

91.     Plaintiff's claims are barred by the doctrine of estoppel.

**EIGHTH AFFIRMATIVE DEFENSE**

**Mistake**

92.     Plaintiff s claimed right of recovery from Defendant is barred in whole or in part by the doctrine of mistake.

**NINTH AFFIRMATIVE DEFENSE**

**Failure to Mitigate Damages**

93.     Plaintiffs claimed right of recovery from Defendant is barred in whole or in part by Plaintiff's failure to mitigate, minimize or avoid any losses Plaintiff allegedly sustained, and recovery against Defendant, if any, must be reduced by that amount.

First Amended Answer and Counterclaim

## TENTH AFFIRMATIVE DEFENSE

### Third Parties

94.     If Plaintiff is entitled to any of the remedies alleged in his Complaint, he is entitled to recover from persons or entities other than Defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

### Fair Use

95.     Plaintiffs' claimed right of recovery from Defendant is barred in whole or in part by the doctrine of fair use.

## TWELFTH AFFIRMATIVE DEFENSE

### Misuse of Copyright

96.     Plaintiffs claimed right of recovery against this Defendant is barred by the doctrine of misuse of copyright.

## THIRTEENTH AFFIRMATIVE DEFENSE

### First Amendment Freedom of Speech

97.     Plaintiff s claimed right of recovery against this Defendant is barred in whole or in part because Plaintiff's actions and speech are afforded Constitutional protection under the First Amendment to the Constitution of the United States.

## FOURTEENTH AFFIRMATIVE DEFENSE

### Forfeiture and Abandonment

98.     Plaintiff's claims are barred in whole or in part to the extent Plaintiff abandoned any valid copyrights.

## FIFTEENTH AFFIRMATIVE DEFENSE

### Lack of Standing

99.     Plaintiff lacks standing to assert the causes of action asserted, and to maintain claims made in the Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

### Reservation of Affirmative Defenses

100.    Plaintiffs Complaint does not describe the claims made against Defendant with sufficient particularity to enable Defendant to determine all applicable defenses, and Defendant therefore hereby reserves his right to assert any and all additional defenses that may be appropriate once the precise nature of each claim is fully ascertained.

## DEFENDANT'S PRAYER ON ANSWER

WHEREFORE, Defendant prays as follows:

A.    That Plaintiff take nothing by way of the instant action;

B.    That Defendant be awarded all costs of suit incurred by reason of his defense, including without limitation attorney fees;

C.    All further relief as the Court may determine to be equitable, proper and just.

First Amended Answer and Counterclaim

**COUNTERCLAIMS**

Defendant and Counterclaimant Ellen Pearson-Kardashian alleges against Plaintiffs and Counter-Defendants Kourtney Kardashian, Kimberly Kardashian, Khloe Kardashian Odom, Robert Kardashian Jr., Kris Jenner, as follows:

**PARTIES AND INTRODUCTION**

101. Counterclaimant Ellen Pearson-Kardashian ("Ellen" or "Counterclaimant") is an individual residing in the State of California.

102. Plaintiff and Counter-Defendant Kourtney Kardashian ("Kourtney" or "Counter-Defendant") is an individual California resident with a principal address in this judicial district.

103. Plaintiff and Counter-Defendant Kimberly Kardashian ("Kimberly" or "Counter-Defendant") is an individual California resident with a principal address in this judicial district.

104. Plaintiff and Counter-Defendant Khloe Kardashian Odom ("Khloe" or "Counter-Defendant") is an individual California resident with a principal address in this judicial district.

105. Plaintiff and Counter-Defendant Robert Kardashian Jr. ("Robert Jr." or "Counter-Defendant") is an individual California resident with a principal address in this judicial district.

106. Plaintiff and Counter-Defendant Kris Jenner ("Jenner" or "Counter-Defendant") is an individual California resident with a principal address in this judicial district.

107. Kourtney, Kimberly, Khloe, Robert, Jr. and Kris Jenner are collectively referred to as the "Kardashians."

108. Each of the counter-defendants named herein was the agent, joint venturer or employee of each of the remaining counter-defendants, and in doing the things hereinafter alleged, each was acting in the course and scope of said agency, employment or joint venture with advance knowledge of, acquiescence in

or subsequent ratification of the acts of each and every other remaining counter-defendant.

## JURISDICTION

109.   This is a federal counterclaim under Rule 13 of the Federal Rules of Civil Procedure seeking redress for Counterclaimant under state law, for the conduct of each counter-defendant undertaken in violation of said state law.

110.   This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. section 1367.

## SUMMARY OF COUNTERCLAIMS

111.   The Kardashians participate in a "reality" television series titled "Keeping Up with the Kardashians" (often referred to simply as "The Kardashians").   The series premiered on October 14, 2007, on the E! (Entertainment) Network. The series follows the often sordid, decadent and scandalous lives of the Kardashians.  The series' phenomenal success is based on a basic premise embraced by the Kardashians in general and Kris Jenner in particular -- to expose their outlandish and controversial activities to world-wide television viewers for commercial profit.  The success of the series is predicated entirely on the revelation of private information of the most salacious nature, the degree and nature of which must continue to escalate in order to maintain public interest.  The television series has engendered international notoriety and generated millions of dollars in revenue for the Kardashians and the Production Company.  This series has also led to the spin-offs series "Kourtney and Kim Take New York," "Khloé & Lamar," and "Kourtney and Khloé Take Miami," (retitled "Kourtney and Kim Take Miami").

112.   Episode 2 from Season 8 of "Keeping up with the Kardashian," entitled "Enough is Enough" ("Episode") first aired on or about June 8, 2013.  As described below, the filing of this entire lawsuit by the Kardashians was nothing more than part of a carefully orchestrated element of the Episode.  The entire saga

culminating in the filing of the complaint in this action was orchestrated off screen by the Kardashians and then scripted for the Episode.

113.   The story began with a mysterious series of text messages sent to Counterclaimant Ellen Pearson-Kardashian from a shadowy "private investigator" starting on March 4, 2013.  In his texts, "Jake the Private Investigator," who is later featured in the Episode, offered damaging information regarding Kris Jenner to Ellen.   He also attempted to entice Ellen by stating that he has damaging information about her obtained through investigations which were purportedly ordered by Robert Kardashian prior to his death.   The texts are purposefully ambiguous but certainly imply that information injurious to her and to Kris Jenner is available for sale to Ellen.  When Ellen refused to engage in such a discussion or transaction, Jake abruptly and menacingly terminated the dialogue by threatening to turn the information that he has over to the Kardashians.

114.   After the failed attempt to entrap Ellen into the drama of their scripted "reality" television production, the Kardashians are left to air what little information they have.   The relevant scenes in the Episode are filmed and edited in such a way to appear as if it is the first time that Kimberly and Khloe are meeting with Jake to discuss Ellen.   In the carefully scripted Episode, Jake ultimately "reveals" to the Kardashians negative information about Ellen but noticeably absent in the Episode is the adverse information that Jake purportedly claimed to possess about Kris Jenner.   The information revealed about Ellen happened to be of the same nature as that Jake attempted to entrap Ellen with prior to the filming of the Episode.  In the Episode, the Kardashians repeatedly attribute highly incendiary and provocative statements about Kris Jenner's fitness as a mother to Ellen when they were in fact made by Robert Kardashian about his ex-wife and their mother.

115.   The Episode was crafted as a form of "damage control" when vivid details were released to the public which ran contrary to the image Kris Jenner has

attempted to portray on "Keeping Up With The Kardashians" as a loving and caring mother who constantly sacrifices for her children.   These details came directly from the diaries and letters of Robert Kardashian, Kris Jenner's former husband.   Robert exposed Kris as a manipulative and devious mother and ex-wife who simply used and exploited her children.

116.   The Kardashians developed and deployed a "spin" designed to neutralize the exceptionally negative opinion that Robert had of Kris Jenner.   The Kardashians' strategy was to neutralize the unrefuted details in Robert's diaries and notes by suggesting that they were in fact fabricated by Ellen.   The Kardashians' strategy was to create a fake scenario where "Robert's story and words" would become the narrative of his surviving widow which the Kardashians could then claim was motivated by greed.   This shameful rewriting of history by the Kardashian Siblings, at the direction and behest of Kris Jenner, was motivated by television rating and commercial profit and is an insult to the legacy of their own father and former husband.

117.   While Ellen is a private person with a career in the real estate industry, the Kardashians do not have any meaningful careers or professions.   Instead, they subsist on exposing their private affairs to the world.   While the disclosure of the facts in the original complaint and the Episode only served to increase the Kardashians' notoriety, the false attribution to Ellen of what Robert had stated and the other defamatory statements made by the Kardashians have caused real and calculable damage to Ellen.

**STATEMENT OF FACTS**

**Ellen's Long-Term Relationship With Robert Kardashian**

118.   Defendant and Countercomplainant Ellen Pearson-Kardashian is the surviving spouse of the late famed attorney Robert Kardashian ("Robert").   Since Robert and Ellen began dating in December 1999, until the day of Roberts's death on September 30, 2003, the two shared a close, personal and romantic relationship.

After a three year courtship, Robert proposed marriage to Ellen in early 2002 and on Christmas day 2002 presented Ellen with an engagement ring.   After their engagement, Ellen moved into the home where Robert lived in Encino, California and subsequently Robert, Jr., then a teenager, joined them because Jenner did not want to care for him.   Robert and Ellen cared for Robert Jr. and built a life together as they planned their coming wedding.

119.   Contrary to the assertion that Ellen "propped" up and married Robert on his "deathbed," it was Robert who insisted that he would not commence medical treatment for his cancer diagnosis unless and until Ellen married him. Indeed, on the Monday following their wedding on Sunday, July 27, 2003, Robert began radical oncological treatment.   In late August 2003, Robert was admitted to Providence St. Joseph Medical Center in Burbank, California and occupied a medical suite with Ellen for a full week.   Contrary to the depiction of Ellen in the Episode, the Kardashian children visited Robert infrequently once he began his treatment and the task of caring for Robert's declining physical condition fell entirely to Ellen.   When Ellen needed additional assistance in the final days of Robert's life, Ellen was forced to turn to her own daughter for help.   Rather than the Kardashian children, it was Ellen's daughter, a trained and certified firefighter and paramedic, who moved into their Encino home to help Ellen deliver hospice care to Robert in the final three weeks of his life.   At the moment Robert took his last breath, none of his children could be bothered to be by his side, opting instead to attend a party at Kourtney's home.

**Robert's Marriage To Ellen Pearson-Kardashian**

120.   On July 17, 2003, Robert was diagnosed with esophageal cancer. Ellen remained a devoted partner and helped care for Robert as his health declined. The couple stayed together and struggled to move their lives forward.   They attempted to keep an air of normalcy while Robert battled cancer.   In an effort to continue their lives as planned, Robert and Ellen remained committed to their

engagement.  The couple decided that, due to the changes in their lives brought on by Robert's illness, instead of the grand wedding they had planned for August 5, 2003 at the Hotel Bel-Air, they should have an intimate ceremony at their family home in Encino.  The Kardashian children were actively involved in planning the original ceremony and attended the July 27, 2003 wedding of their father, Robert Kardashian, to their step-mother, Ellen Pearson-Kardashian.  Kourtney, Kimberly and Khloe even accepted diamond necklaces that were purchased for them by Robert and Ellen as keepsakes for attending the wedding.

121.   At no time during the one and a half year engagement, planning of the wedding or marriage did the Kardashian children object to their father's decision to marry Ellen, even with the knowledge that Robert's medical diagnosis was fatal.  During the two months between the date of their marriage and Robert's tragic death, Ellen helped Robert cope with his illness and took great care to make sure that Robert was cared for and loved by, not only herself but also by, his entire family.

## "Jake The Private Investigator" Makes His Scripted Appearance

122.   On March 4, 2013, Ellen received a text message from "Jake the Private Investigator" who disguised his name as Tom.  Jake's "services" have been retained by the Kardashians in the past.  Specifically, in an episode of "Kourtney and Kim Take Miami" which aired on the E! Network on April 7, 2013, Kim hired Jake to follow Kourtney's boyfriend.  The precise words texted by Jake and Ellen are contained in Exhibit A attached hereto.

123.   In Exhibit A, the first text message is date stamped March 4, 2013 9:12 PM, when Jake contacted Ellen for the first time and tried to entice her into contacting him by purporting to have damaging information regarding her and Kris Jenner.  He claimed that Robert Kardashian had asked him to conduct an investigation into the background of both Ellen and Jenner.  Ellen ignored the message and did not reply to Jake.  On March 7, 2013 Jake called Ellen by

telephone.  Ellen answered and without hesitation, Jake forcefully tried to convince Ellen into meeting him in order for Ellen to purchase the information that Jake claimed to have.  Jake indicated that he wanted to sell these materials because he needed the money.  Ellen persistently rejected Jakes demands for an in-person meeting and, when he continued to insist, Ellen suggested that Jake simply contact the media as they may be interested in whatever Jake had to sell.

124.   In an effort to divert his attention away from her and believing that Jake's primary interest was to make money by selling the information he had, Ellen relayed the facts about Jake's attempts to contact and meet her in person to an acquaintance at Bauer Publishing and provided Jake's phone number.  Ellen's acquaintance called Jake and left a message on Jake's voicemail.  Jake then sent a second text message, time stamped March 7, 2013 1:52 PM.  In the second message Jake said "Thanks but will not deal DIRECTLY with them. U should know there's a file in here he had done on you also.  Kid at 15, 4 husbands, bankruptcy." Jake's reference to "them" is Bauer Publishing from the massage left by Ellen's acquaintance. Ellen responded by telling Jake that the information he threatened to reveal about her is all in the public record.  Jake then accused Ellen of "outing" him and stated in yet another text, "Thanks for the burn."  In an effort to calm Jake and end the harassing phone calls and text messages Ellen explained that there was "No harm intended I simply thought this might be a good fit anonymously for you," with regard to the referral of Jake to Ellen's acquaintance at Bauer Publishing.  Jake again asked to meet with Ellen saying "NO reporters" and Ellen again refused. Jake final statement to Ellen was that because she did not wish to deal with him he would take the negative information directly to the Kardashians.  Empty handed from his unsuccessful attempt to entrap Ellen, Jake apparently went back to the Kardashians and they were forced to air what little information he was able to gather.

**Litany Of Defamatory Statements In The "Enough Is Enough" Episode**

125. At all times herein, and without factual support for their accusations, and with the intent to sacrifice Ellen's professional career and personal reputation for television ratings, the Kardashians published both oral and written defamatory statements, knowing such statements to be false in reference to Ellen, *to wit,* by publishing the Episode, which first aired on or about June 8, 2013 and has re-aired several times since. In the Episode, the Kardashians falsely attributed words written by the late Robert Kardashian as being spoken by Ellen herself. The statements were made by Robert Kardashian in his private diary which Robert took from his Encino home to Ellen's home in Indian Wells, eventually leaving all of his separately property in Ellen's Indian Wells property to Ellen. Robert's statement focused on Kris Jenner's role as an atrocious mother and former spouse. The Kardashians made the same false accusations via Twitter and to individuals and/or entities in the entertainment industry with the intent of destroying Ellen's reputation.

126. In the clearly scripted Episode, the Kardashians are seen fumbling through a chain of events in which they come across an entertainment news article published by "The Daily Mail." The article republished direct quotes from a diary and letters written by Robert Kardashian before his death. The writings reflect the thoughts of a tormented father as he struggled with the devastation of divorce and his family being torn apart by the actions of his former wife Kris Jenner. There is no dispute as to the authenticity of the writings. At numerous times during the episode, the Kardashians refer to statements written by their own father and attribute the statement directly to Ellen.

127. In the Episode, Kimberly called Kourtney and Khloe and stated, while on speaker phone, "Dad's ex says that mom used to beat me and hit me and kick me and like . . . she claims dad told her." This statement is false because Ellen did not ever make these claims. These claims were published from a diary and letters

written by Robert Kardashian and the Kardashians purposely and falsely attributed the statements to Ellen.

128.   In a monologue, Khloe stated "My dad was dying and my father's ex-wife brought a priest to my dad's home and married my father."  This statement is false and defamatory.  A friend presided at their marriage at the home in which Robert, Ellen and Robert Jr. had lived together for over a year and all of the Kardashian children were present at the planned wedding.  It is true that Robert had already been diagnosed with cancer when he married Ellen, however, they had been engaged for a year and half prior to the marriage.

129.   During the Episode, Kimberly stated "My dad's like, ex-wife that he was married to for two weeks, she recently came out saying that my mom beat me as a child, like that, like, all these ridiculous stories."  This statement is false because Ellen did not make these claims.  These statements were published from a diary and letters written by Robert Kardashian and Kimberly purposely attributed the statements to Ellen.

130.   In the Episode, Kimberly referred to Ellen as "my dad's wife of a few weeks."  Robert and Ellen were married on July 27, 2003 and were married until Robert's death on September 30, 2003.  Kimberly attended the wedding of her father, Robert, and Ellen and, therefore, knew that the statement she made in the Episode was false.  Kimberly made the statement knowing that it would debase Ellen's marriage and degrade Ellen's credibility to the public.

131.   In the Episode, Khloe referred to Ellen and said that "she married him on his deathbed."   The couple was married at their home in Encino at a small ceremony in which the Kardashian children were present as guests and witnesses.  This statement is false and implies that Robert was an invalid when he married Ellen.  The truth is that Robert and Ellen had been engaged for a year and a half and decided together to be married even after Robert's cancer diagnosis.  On the

day of Robert and Ellen's wedding, Robert was physically and mentally capable of entering into a valid marriage.

132.   In the Episode, Kris Jenner stated that Ellen "propped him (Robert) up on a pillow, basically in his own bed and married him in his pajamas."   Kourtney responded to Jenner's statement by saying "Mom, he wasn't on the bed, he was on the couch."   Then Jenner said, "Well, propped him up on the couch and married him."   These statements are false and imply that Robert was an invalid and physically and mentally incapacitated at the time of his marriage.  The truth is that couple was married at their home in Encino on a hot summer day, July 27, 2003 where Robert wore a "Tommy Bahama" style shirt (not his pajamas) and Ellen wore a sundress.

133.   In the Episode, Jenner is seen speaking with an attorney named "Todd."   After discussing the merits of the case Jenner exclaimed, "Can we just press charges already!"   This statement is misleading.   The statement implies that Ellen is a criminal and therefore is going to be treated as such by having charges pressed against her.

134.  In the Episode, the Kardashians are depicted as being distraught because "Todd the Attorney" had not yet been able to serve Ellen with the complaint.  Kim walked into the scene and excitedly declared "Guess what? That slippery snake has been served. Snake. We finally got that slippery… that slippery snake."   Kim then exclaimed "we had the serving person call and say that they wanted to like, set up a meeting with her to pretend they are interested in a property in escrow and they met at a hotel and she's like, 'I'll be the tall blond wearing this.' And they're like, 'I'll be in a grey suit.' And so she just met him in the lobby and he's like, 'Hey, I'm such and such and you've been served."   These facts are not true.  Ellen was not attempting to evade service.  The facts stated in the Episode were contrived to negatively portray Ellen as a person who had

committed an unlawful act and was, therefore, trying to evade service of process because of her guilty intent.

135.   Numerous times throughout the Episode, the Kardashians and Jenner refer to Ellen as telling "lies" and spreading "rumors."   Kimberly goes as far as to vow that she is "not going to let this women get away with something this crazy." All of this dialogue and the quotes herein were scripted, edited and delivered to make Ellen appear as diabolical and ruthless as possible.  In actuality, which is seldom depicted on "reality" television, the Kardashians manipulated the events depicted and presented the information to viewers in a way that most flattered them and deprecated Ellen.

**Republication And Tweets With Additional Defamatory Statements**

136.   After the article was published but before the episode aired, Khloé tweeted "How can such a piece of trash even mention my father's name? You married him on his deathbed while he was not even aware of his surroundings." This statement is false and implies that Robert was an invalid when he married Ellen.  The truth is that Robert and Ellen had been engaged for a year and a half and decided together to be married even after Robert's cancer diagnosis.  The day of Robert and Ellen's wedding, Robert was physically and mentally capable of entering into a valid marriage.  The couple was married at their home in Encino at a small ceremony in which the Kardashian children were present as guests and witnesses.

137.   Khloe also tweeted "10yrs after my father's passing[]&[]now that she has filed for bankruptcy... NOW she sells FALSE stories.  Hope that money buys you water in hell."  This statement is false.  First, it has not been 10 years since Robert's death.  Second, Ellen did not make these claims and the "stories" were not false as they were exactly what they were represented to be—the words of their father, Robert Kardashian.

138.   Kimberly Kardashian tweeted "This woman he [Robert Kardashian] married 4 (for) 2 (two) wks (weeks) before he died needs 2 (to) get a job instead of trying 2 (to) destroy families w (with) fake stories."  Kimberly made the statement knowing that it was false and that it would debase Ellen's marriage and degrade Ellen's credibility to the public.

139.  Khloe Kardashian has over 8 million followers and Kimberly Kardashian has over 18 million followers on Twitter.  The tweets were then republished to countless websites including www.intouchweekly.com.  The slanderous and libelous statements and accusations were further republished to untold numbers of persons by virtue of the Kardashians' words to others, the statements and accusations conveyed via the Internet, the network television channel(s), and social networking mediums, including Twitter.

140.  As a result of the Kardashians' unlawful conduct, Ellen has suffered damage to her reputation and character, and to her business and ability to earn a living.  These damages were caused through no fault of Ellen's but were created by reason of the Kardashians' unlawful conduct meant to destroy Ellen's reputation and ability to earn a living.

**Exploitation Of The Judicial Process To Promote Television Series**

141.   Based on the facts set forth above it is evident that—starting from the text messages from Jake the Investigator and running through the description of the lawsuit on the Episode—that the filing of this litigation was an integral aspect of the television programming and development process.  There can be no question that the Kardashians worked with the Production Company to craft and fully script the filing of the lawsuit and service of the summons as a sensational and dramatic scene for Season 8, Episode 2 of "Keeping Up With The Kardashian."  The programming and decisions and scripting was designed to generate, retain and maximize continuing interesting and further boost the ratings of the television series.

# FIRST COUNT
# DEFAMATION

(Against All Counter-Defendants)

142.   Ellen hereby realleges paragraphs 1 through 141 of this Counterclaim as though fully set forth herein in both form and substance.

143.   Counter-Defendants in this case intentionally, maliciously, and knowingly made disparaging, untrue, and slanderous comments about Ellen, broadcasting them to an untold number of persons on their television show, "Keeping up with the Kardashians." Counter-Defendants also libelously published such comments in writings, production notes and scripts to be distributed to the production crew and talent of their television show, "Keeping up with the Kardashians."   These false comments were made with the purpose of lowering Ellen's esteem in the community and to deter people from associating with Ellen.

144.   Counter-Defendants failed to use reasonable care to determine the truth or falsity of the defamatory statement and widely distributed the defamatory statements knowing there was a high likelihood that the statements were in fact false.

145.   Such conduct was extreme and outrageous due to the nature and sensitivity of the comments, the widespread audience of such television show and hence audience of such comments, and the intentional, malicious, and knowing manner in which the comments were made to damage Ellen's reputation and person with no legitimate public concern.

146.   As a direct and proximate result of such intentional, extreme, and outrageous conduct of the counter-defendants, Ellen was in fact injured in her personal and business reputations and suffered in an amount to be proven at trial, within the jurisdiction of this Court.

## SECOND COUNT
## PUBLIC DISCLOSURE OF PRIVATE FACTS
### (Against all Counter-Defendants)

147.   Ellen hereby realleges paragraphs 1 through 146 of this Counterclaim as though fully set forth herein in both form and substance.

148.   Counter-Defendants in this case intentionally, maliciously, and knowingly made disparaging, untrue, and slanderous comments about Ellen, broadcasting them to an untold number of persons on their television show, "Keeping up with the Kardashians." Counter- Defendants publically disclosed private facts regarding Ellen, including her personal history as a minor, in a manner that would be considered highly offensive to any reasonable person.

149.   Such conduct was extreme and outrageous due to the nature and sensitivity of the comments, the widespread audience of such television show and hence audience of such comments, and the intentional, malicious, and knowing manner in which the comments were made to damage Ellen's reputation and person with no legitimate public concern.

150.   As a direct and proximate result of such intentional, extreme, and outrageous conduct of the counter-defendants, Ellen was in fact injured in her personal and business reputations and suffered in an amount to be proven at trial, within the jurisdiction of this Court.

## THIRD COUNT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Counter-Defendants)

151.   Ellen hereby realleges paragraphs 1 through 150 of this Counterclaim as though fully set forth herein in both form and substance.

152.   Counter-Defendants in this case intentionally, maliciously, and knowingly made disparaging, untrue, and slanderous comments about Ellen,

broadcasting them to an untold number of persons on their television show, "Keeping up with the Kardashians."

153.   Such conduct was extreme and outrageous due to the nature and blatant falsity of the comments, the widespread audience of such television show and hence audience of such comments, and the intentional, malicious, and knowing manner in which the comments were made to damage Ellen's reputation and person.

154.   As a direct and proximate result of such intentional, extreme, and outrageous conduct of the counter-defendants, Ellen was in fact injured in her personal and business reputations, as well as in her own mental and personal capacities, and suffered severe emotional distress in an amount to be proven at trial, within the jurisdiction of this Court.

## FOURTH COUNT

## CIVIL HARASSMENT

### (Against all Counter-Defendants)

155.   Ellen hereby realleges paragraphs 1 through 155 of this Counterclaim as though fully set forth herein in both form and substance.

156.   Counter-Defendants intentionally, maliciously, and knowingly made disparaging, untrue, and slanderous comments about Ellen, broadcasting them to an untold number of persons on their television show, "Keeping up with the Kardashians." Counter-Defendants engaged a private investigator to engage in repeated text messages to Ellen attempting to elicit some unlawful or illicit behavior from Ellen. Defendants will continue to air and broadcast their television show repeatedly to an unknown and immense number of viewers.

157.   Such conduct constitutes a series of acts that evidence a continuity of purpose to harass Ellen that serves no legitimate purpose.

158.   As a direct and proximate result of such intentional, malicious, and outrageous conduct of the counter-defendants, Ellen was in fact injured in her

personal and business reputations, as well as in her own mental and personal capacities, and suffered severe emotional distress in an amount to be proven at trial, within the jurisdiction of this Court.

## FIFTH COUNT

## CIVIL CONSPIRACY TO DEFAME

(Against All Counter-Defendants)

159.   Ellen hereby realleges paragraphs 1 through 158 of this Counterclaim as though fully set forth herein in both form and substance.

160.   Counter-Defendants intentionally, maliciously, and knowingly made disparaging, untrue, and slanderous comments about Ellen, broadcasting them to an untold number of persons on their television show, "Keeping up with the Kardashians." Defendants caused a private investigator to engage in repeated text messages to Ellen attempting to elicit some unlawful or illicit behavior from Ellen. Defendants will continue to air and broadcast their television show repeatedly to an unknown and immense number of viewers. Counter-Defendants discussed with each other and with other unknown persons the actions set forth above.

161.   By and through the actions set forth above, Counter-Defendants agreed to, entered into, and formed a conspiracy to engage in unlawful conduct designed to injure Counter-Claimant by virtue of the development, filming, editing and broadcast of the Episode, along with other related activities including but not limited to tweeting and re-tweeting as set forth herein..

162.   By and through the actions set forth above, Counter-Defendants engaged in acts pursuant to, and in furtherance of, said conspiracy.

163.   The actions of Counter-Defendants were committed with willfulness, wantonness, malice, and oppression, entitling Counterclaimant to an award of actual, compensatory, and punitive damages.

## **PRAYER ON COUNTERCLAIMS**

WHEREFORE, COUNTERCLAIMANT PRAYS AS FOLLOWS:

A. On the First Count:

  A.   For general damages in an amount according to proof.

  B.   For special damages in an amount according to proof.

  C.   For interest on the above sums according to proof.

  D.   For exemplary damages in an amount sufficient to punish;

B. On the Second Count:

  A.   For general damages in an amount according to proof.

  B.   For special damages in an amount according to proof.

  C.   For interest on the above sums according to proof.

C. On the Third Count:

  A. For general damages in an amount according to proof.

  B. For special damages in an amount according to proof.

  C. For interest on the above sums according to proof.

D. On the Fourth Count:

  A. For general damages in an amount according to proof.

  B. For special damages in an amount according to proof.

  C. For interest on the above sums according to proof.

  D. For an injunction commanding that counter-defendants refrain from any further defamatory reference made in any regard to Defendant and Counterclaimant.

E. On the Fifth Count:

  A. For general damages in an amount according to proof.

  B. For special damages in an amount according to proof.

  C. For interest on the above sums according to proof.

    First Amended Answer and Counterclaim

F.  On all counts:

      A.  For costs of suit.

      B.  For attorney's fees if allowable by law.

      C.  For all other and further relief as this Court may deem just and proper.

DATED: July 11, 2013                   **PETER LAW GROUP**

By:  _____

MARCUS J. LEE
Attorneys for Defendant and Counterclaimant
ELLEN PEARSON-KARDASHIAN

      First Amended Answer and Counterclaim

# DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Ellen Pearson-Kardashian demands trial by jury in this action of all issues so triable.


DATED: July 11, 2013                    **PETER LAW GROUP**


                                        By:   _____
                                        MARCUS J. LEE
                                        Attorneys for Defendant and
                                        Counterclaimant
                                        ELLEN PEARSON-KARDASHIAN

**EXHIBIT A**
**TO DEFENDANT'S FIRST AMENDED ANSWER**
**AND COUNTERCLAIM**

1

Verizon 3G 4:44 PM
Messages (424) 666-8804 Edit
Call FaceTime Add Contact
Mar 4, 2013 9:12 PM
Ellen? I have possession of photos from an investigation Bobby had done on his ex Kris in 1989. Contact me PERSONALLY if interested. Tom
Thanks but will not deal DIRECTLY with them. U should know there's file in here he had done on you also. Kid at 15, 4 husbands, bankruptcy
Send

2

Verizon 3G 4:46 PM
Messages (424) 666-8804 Edit
That's of public record you don't need a PI to get that!
Wish you wouldn't have outed me. Taking all this somewhere else. Thanks for the burn.
Mar 7, 2013 2:15 PM
I am under contract. No harm intended I simply thought this might be a good fit anonymously for you
Fair enough. But can't take chances. Want to meet you and discuss the process first. NO
Text Message
Send

3

Verizon 3G 4:48 PM
Messages (424) 666-8804 Edit
Fair enough. But can't take chances. Want to meet you and discuss the process first. NO reporters!
Mar 7, 2013 2:37 PM
I am under contract and can not talk or meet with anyone regarding any story or photos
Mar 7, 2013 3:17 PM
(1/2)Thanks, wish I had known that, I'm still outed. Have to handle this another way. My only other back door now is directly to the K
Text Message
Send

4

Verizon 3G 4:49 PM
Messages (424) 666-8804 Edit
process first. NO reporters!
Mar 7, 2013 2:37 PM
I am under contract and can not talk or meet with anyone regarding any story or photos
Mar 7, 2013 3:17 PM
(1/2)Thanks, wish I had known that, I'm still outed. Have to handle this another way. My only other back door now is directly to the K
(2/2)family. Nasty business, this.
Text Message
Send